**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

RANDY L. RUSSELL, # 06369-082        *

     Petitioner        *

  v.        *        Civil Action No.  GLR-12-2320

J. F. CARAWAY        *

     Respondent        *
         ***

**<u>MEMORANDUM</u>**

  Pending is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 filed by self-represented Petitioner Randy L. Russell ("Russell").  Counsel for Respondent has filed a Motion to Dismiss, or in the Alternative, for Summary Judgment (ECF No. 5),[1] Russell has submitted a response (ECF No. 7), to which Respondent has filed a reply (ECF No. 8).  After careful review of the record, exhibits, and applicable law, the Court deems a hearing unwarranted.  <u>See</u> Local Rule 105.6 (Md. 2011).  For reasons to follow, the Petition will be denied and the case dismissed.

**BACKGROUND**

**1.  Petitioner's Claims**

  Russell, an inmate at the Federal Correctional Institution-Cumberland ("FCI Cumberland"), claims he was improperly removed from the Residential Drug Abuse Program ("RDAP"), and lost the opportunity for early release.  He asserts that he was removed from the program because he had complained about the conditions at the halfway house where he was

---

[1] The Motion will be treated as a Motion for Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure, because materials outside the four corners of the pleadings have been considered.  <u>See</u> <u>Bosiger v. U.S. Airways</u>, 510 F.3d 442, 450 (4th Cir. 2007).

placed and declined to cooperate with the Federal Bureau of Investigation[2] by testifying in court. See id. at 13-15; ECF No. 7 at 3, 6-8.  Further, Russell contends his removal from RDAP failed to comply with Bureau of Prisons' ("BOP") internal guidelines for expelling an inmate.  See id. at 8-9.  Russell asks the Court to grant him the "relief to which he may be entitled in this proceeding."  ECF No. 1 at 8.

### 2.  Facts

On June 28, 2010,  Petitioner was sentenced in the United States District Court for the District of Vermont for violating 21 U.S.C. § 841 and § 846, "Conspiracy to Distribute 100 Kilograms  or  More  of  Marijuana,"  18  U.S.C.  §  1956(A)(1)(b)(I),  "Money  Laundering";  18 U.S.C. § 982(A)(1) and 21 U.S.C. § 853, "Criminal Forfeiture."   He received a 30 month sentence with a three year term of supervision to follow.  See Ex. 1 - Decl. of Crystal Kindall, Att. A, SENTRY Public Information.

In September 2010, Russell requested placement in a RDAP, and was determined to be qualified for the program based on a confirmed history of cannabis abuse.  See Ex. 1-Kindall Decl., Att. C at 11, Notice of RDAP Qualification.  Petitioner's Pre-Sentence Report indicated that he was a daily user of marijuana between the ages of 13 and 17, and continued to use marijuana to cope with stressful situations.  Russell had also reported a history of using cocaine, psilocybin mushrooms, ecstasy and LSD, though not consistently.  See Kindall Decl. ¶ 5.

On September 15, 2010, Petitioner signed an agreement acknowledging his early release date under § 3621(e) was provisional and subject to change.  He also acknowledged that he understood that if he was expelled from the RDAP he would lose his eligibility for early release consideration.  Additionally, he agreed to the following statement: "I have provided truthful

---

[2]  Counsel for Respondent did not respond to this claim of retaliation.

answers to all questions.   I acknowledge a severe alcohol/substance problem during the last period of 12 months before my arrest, and I am now seeking treatment for my problem." <u>See</u> Kindall Decl, Att. D p. 13, Agreement To Participate in RDAP.

On October 26, 2010, Petitioner entered the RDAP at FCI Cumberland and completed the first part of the program on August 15, 2011.  He completed the second part of the program and entered a halfway house on October 27, 2011, to begin the third and final component of the program, Community Transitional Drug Abuse Treatment ("TDAT").  Russell was assigned to the Coolidge House in Boston, Massachusetts.  As part of the requirements, he attended Aftercare Services, a vendor with whom the BOP has a contract for treatment services.  <u>See</u> Kindall Decl. ¶8.

According to Respondent's verified exhibits, on November 2, 2011, Petitioner was evaluated at Aftercare Services where he reported to staff that he had not used marijuana since 16 years of age, when he had tried it once and did not like it.  He reported trying crack cocaine once at age 27.  Further, he reported that his lawyer had coerced him into saying that he did drugs more often so that he could receive a year off his sentence.  <u>See</u> Kindall Decl ¶ 8, Att. E at 17, Substance Abuse Integrative Summary-Aftercare Services.  Usually, the contract facilities will alert the TDAT office by phone regarding significant issues, including evidence that a client has lied to get into the RDAP program.  However, in this case, Aftercare Services did not call the TDAT, but sent the assessment to the TDAT office with their billing invoice, which was received in the TDAT office on December 30, 2011, and was reviewed by TDAT staff on January 10, 2012.  <u>See</u> Kindall Decl ¶ 8.

Russell disputes these assertions.  He denies lying on his RDAP application.  He denies telling Aftercare Services staff  that he has not used marijuana since age 16, used marijuana only once, and that he tried crack cocaine at age 27.  ECF No. 7 at 6.[3]  He states that his substance abuse history is well documented in treatment plans prepared by RDAP staff and in his Pre-Sentence Report.  ECF No. 7 at 7.  Russell argues Aftercare Services fabricated the information that led to his removal because he complained about the conditions of the halfway house and the lack of professionalism and therapeutic services provided by Aftercare staff.  See id.  Further, he claims the BOP failed to follow its own removal procedures.  ECF No. 7 at 8-9.  Russell avers the BOP failed to follow its own regulations and his removal was arbitrary, capricious and an abuse of discretion.  See id. at 10**.**

On January 20, 2012, TDAT staff requested Russell's removal from the program because he neither met the diagnostic criteria for abuse and dependency nor needed further substance abuse treatment.  See Kindall Decl., Att. F at 24, Request to Delay, Remove or Reinstate Early Release.  Petitioner was removed from the program and returned to FCI-Cumberland on February 27, 2012.  See Att. B at 9.  Russell filed this Petition for federal habeas relief on August 2, 2012.  His current projected release date is October 27, 2012.  See Att. A at 5.[4]

**3.   Residential Drug Abuse Program (RDAP).**

The BOP is authorized under 18 U.S.C. § 3621(b) to implement drug abuse treatment programs for its prisoners: "The Bureau shall make available appropriate substance abuse

---

[3]  Petitioner's "affidavit" is signed but undated.  ECF No. 7.  For reasons stated herein, the statements made in Petitioner's affidavit, if credible, do not cure Petitioner's failure to exhaust his administrative remedies.

[4]  See BOP Inmate Locator Website: http://www.bop.gov/iloc2/InmateFinderServlet?Transaction.

treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." The BOP is required to ensure that all eligible prisoners "with a substance abuse problem have the opportunity to participate in appropriate substance abuse treatment. . . [and the BOP shall] provide residential substance abuse treatment." 18 U.S.C. § 3621(e)(1).

As an incentive for successful completion of RDAP, "[t]he period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program **may** be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve." 18 U.S.C. § 3621(e)(2)(B) (emphasis added). The statute is clear that early release remains within the discretion of the BOP. See Lopez v. Davis, 531 U.S. 230, 240 (2001). In the exercise of this discretion, the BOP has adopted regulations respecting the early release of prisoners who successfully complete RDAP.

The RDAP consists of three components. See 28 C.F.R. § 550.53. For admission into RDAP, an inmate must have a verifiable substance use disorder, sign an agreement acknowledging program responsibility, and when beginning the program, be able to complete all three components. See 28 C.F.R. § 550.53(b)(1-3). The first component is the residential unit-based component which consists of individual and group activities provided by a team of drug abuse treatment specialists and the Drug Abuse Treatment Coordinator in a treatment unit set apart from the general prison population. See 28 C.F.R. § 550.53(a)(1). The residential unit-based component of the treatment program lasts a minimum of 500 hours, over a nine to twelve-month period. See id. See also BOP Program Statement 5330.11, Psychology Treatment Programs.[5] After successful completion of the residential unit-based component, and if time allows between completion of the unit-based component of the RDAP and transfer to a

---

[5] See http://www.bop.gov/DataSource/execute/dsPolicyLoc.

community-based program, the inmate enters component two, and must participate in follow-up services to the unit-based component of the RDAP. See 28 C.F.R. § 550.53(a)(2). At this time, inmates are given counseling support while they transition back into general population at the facility. The third component is the TDAT. See 28 C.F.R. § 550.53(a)(3), a community-based drug abuse treatment program. The warden may find an inmate ineligible for participation in a community-based program. See id. For inmates to successfully complete all components of RDAP, they must participate in TDAT in the community. If an inmate refuses or fails to complete TDAT, he or she fails the RDAP and is disqualified for any additional incentives. See 28 C.F.R. § 550.56.

## STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is properly granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party must demonstrate through the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," that a reasonable jury would be unable to reach a verdict for the non-moving party. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). When this burden is met, the non-moving party then bears the burden of demonstrating that there are disputes of material fact and that the matter should proceed to trial. See Matsushita Electric Industrial Company v. Zenith Radio Corporation, 475 U.S. 574, 586 (1986).

A material fact is one that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving

party."  Id.  In considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial.  See id. at 249.  Further, a court must construe the facts in the light most favorable to the party opposing the motion.  See United States v. Diebold, 369 U.S. 654, 655 (1962); In re: Apex Express Corporation, 190 F.3d 624, 633 (4th Cir. 1999).  In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  Mindful that petitioner is self-represented, his pleadings are liberally construed.  See Haines v. Kerner, 404 U.S. 519, 520 (1972).

## DISCUSSION

### 1.  Administrative Exhaustion

Respondents seek dismissal on the grounds that Russell has not exhausted his administrative remedies. ECF No. 5 at 6.[6]  Petitioner counters that he "followed the procedures to the letter, filing all appropriate Bureau of Prison forms."  ECF No 7 at 7, Petitioner's Affidavit.  Petitioner has submitted documentation that after submitting an administrative remedy to the Regional Office on March 23, 2012, which was rejected for being filed at the

---

[6] The Bureau of Prisons has established a multi-tier system whereby a federal prisoner may seek formal review of any aspect of his imprisonment.  See 28 C.F.R. §§ 542.10–542.19 (1997).  First, "an inmate shall. . .present an issue of concern informally to staff, and staff shall attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy."  28 C.F.R. § 542.13(a).  Second, if an inmate at an institution is unable to informally resolve his complaint, he may file "a formal written Administrative Remedy Request, on the appropriate form (BP–9), [within] 20 calendar days following the date on which the basis for the Request occurred."  28 C.F.R. § 542.14(a).  The warden has twenty (20) days in which to respond.  See 28 C.F.R. § 542.18.  An inmate who is not satisfied with the warden's response may submit an appeal, on the appropriate form (BP–10), to the appropriate Regional Director within twenty (20) calendar days from the date the warden signed the response.  See 28 C.F.R. § 542.15(a).  An inmate who is not satisfied with the Regional Director's response may submit an appeal, on the appropriate form (BP–11), to the General Counsel within thirty (30) calendar days from the date the Regional Director signed the response.  Id.  The Regional Director has thirty (30) days and the General Counsel has forty (40) days to respond.  See 28 C.F.R. § 542.18.

wrong level, he attempted to file an administrative remedy at the institution level on April 26, 2012. ECF No. 7 at 27. He also provides an "Inmate Request to Staff" dated August 21, 2012 (almost four months after his last alleged administrative remedy was submitted) where he seeks a receipt for this remedy. Id. In response, the counselor confirms Petitioner submitted one administrative remedy to him and there is no receipt. See id. [7]

Respondent asks for dismissal of the Petition based on Russell's failure to comply with the exhaustion requirements of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), which provides: "no action shall be brought with respect to prison conditions under section 1983 of this title. . .by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Id. The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. See Porter v. Nussle, 534 U.S. 516, 532 (2002).

Federal courts have consistently required exhaustion of administrative remedies prior to petitioning for a writ of habeas corpus to allow the agency to develop a factual record and apply its expertise which can facilitate judicial review. It also permits agencies to grant the relief, which conserves judicial resources and permits agencies to correct their own errors, fostering administrative autonomy, before a petitioner hales the matter into federal court. See McCarthy v. Madigan, 503 U.S. 140, 144–145 (1992); Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761–62 (3rd Cir. 1996); see also Asare v. U.S. Parole Commission, 2 F.3d 540, 544 (4th Cir.

---

[7] Respondent notes the counselor does not confirm the subject of the administrative remedy, the date he received it from Russell, or that Russell had previously inquired about the status of his remedy ticket as Russell claims. ECF No. 8 at 2.

1993) (noting inmate can exhaust the administrative remedies then seek federal habeas corpus relief).

Russell states that, after he was removed from the halfway house on February 6, 2012, he was in transit and did not learn of the reason for his removal until his return to FCI Cumberland at the beginning of March 2012.  ECF No. 7 at 5. [8]  He presents no facts to suggest here that exhaustion would have proved futile or afforded inadequate relief, or that the BOP's lack of a response, after he filed for relief, justified his abandonment of other available administrative remedies.  Notably, had Russell fully exhausted his administrative remedies, which he has not, he presents no grounds for habeas relief.

### 2.  Due Process

Whether to grant a subsequent reduction in sentence is vested in the discretion of the BOP.  See 18 U.S.C. § 3621(e)(2)(B).  Federal prisoners have no constitutional or inherent right to participate in rehabilitative programs while incarcerated.  See Moody v. Daggett, 429 U.S. 78, 88, n. 9 (1976).  Nor do prisoners have a constitutional right to release before the expiration of a valid sentence.  See Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979); see also Sandin v. Conner, 515 U.S. 472, 484 (1995).  As noted earlier, the BOP is not required to grant early release after successful RDAP completion.  See Lopez v. Davis, 531 U.S. 239–41 (2001).

A constitutionally-protected interest may arise either from the Due Process Clause itself, or from a statute, rule, or regulation.  See Hewitt v. Helms, 459 U.S. 460, 466 (1983).  Russell's

---

[8]   If true, it is troubling that Russell was first informed of the reasons for his removal only when he was returned to FCI Cumberland.  Indeed, Russell's filing of the instant petition in August 2012, only two months from his projected release date, likely renders any relief that could be awarded moot.  There are no facts to suggest, however, that Russell was deliberately hindered from accessing the administrative remedy procedure process.

9

claim that his removal from the halfway house violated his right to due process is meritless.  He has no protected liberty interest in a reduced sentence.  At the start of the RDAP program, he was informed that he was not entitled to early release and his early release date under § 3621(e) was provisional and subject to change.  He also acknowledged that he understood that if he was expelled from the RDAP he would lose his eligibility for early release.  Accordingly, Russell did not possess a statutorily protected interest in early release, therefore, there are no grounds for habeas relief.

Russell's claim that the BOP failed to follow its own procedures relies on a BOP program statement stating TDAT inmates are subject to the same disciplinary regulations as other BOP prisoners.  ECF No. 7 at 8, BOP Program Statement 7430.02.  These procedures address prohibited behaviors during the TDAT component, not circumstances where removal is effectuated for failure to initially comply with RDAP eligibility requirements.  See id.  A habeas claim cannot be sustained based solely upon the BOP's purported violation of an internal program statement because noncompliance with a BOP program statement is not a violation of federal law.  Program statements are "internal agency guidelines [that] may be altered by the [BOP] at will. . . ."  Jacks v. Crabtree, 114 F.3d 983, 985  n. 1 (9th Cir. 1997)  (rejecting claim of liberty interest in the one-year reduction because the statute is not written in mandatory language and denial of reduction only requires inmate to serve sentence originally imposed); see also Reno v. Koray, 515 U.S. 50, 61, 115 (1995) (stating BOP program statements are interpretive rules); BOP Program Statement 1221.66, Chapter 2.1 (referring to BOP program statements as "policies," not rules).

Viewing the facts in the light most favorable to Russell, there is no evidence of unconstitutional conduct or evidence that the agency acted outside the scope of its authority. Petitioner presents no genuine dispute as to any material fact and Respondent is entitled to judgment as a matter of law.  Because Russell does not have a protected liberty interest in either RDAP participation, or its associated early release benefits, he cannot support a claim based upon a violation of his procedural due process rights, and summary judgment should be entered in favor of Respondent with regard to such claim.[9]

## CONCLUSION

The Court determines that no genuine issue as to any material fact is presented and Respondent is entitled to a judgment as a matter of law.  Summary judgment shall be entered in favor of Respondent and habeas corpus relief shall be denied by separate Order.

November 13, 2012                                           /s/
                                                  _____
                                                  George L. Russell, III
                                                  United States District Judge

---

[9]  To the extent Russell wishes to assert claims of retaliation, they may be raised in a separate complaint. This Court expresses no opinion on the merit of these claims.